IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 20, 2001

## STATE OF TENNESSEE v. HOLLIE D. CAMPBELL

**Direct Appeal from the Criminal Court for Washington County**
**No. 24946     Lynn W. Brown, Judge**

**No. E2000-00373-CCA-R3-CD**
**July 2, 2001**

On appeal, the issue is whether a defendant, who pled guilty pursuant to a plea agreement that allowed for a request for judicial diversion, may be sentenced by the trial court to additional time over and above the negotiated plea agreement in the event the Defendant violates the terms and conditions of judicial diversion. We hold the answer to be yes. Further, after a careful review we conclude that the trial court properly sentenced the Defendant. The Defendant's sentence is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. JAMES CURWOOD WITT, JR., J., filed a concurring opinion.

David F. Bautista, District Public Defender; Ivan M. Lilly, Assistant Public Defender; and Julie A. Rice, Knoxville, Tennessee, for the appellant, Hollie D. Campbell.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Victor Vaughn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On January 5, 1999, the Defendant, Hollie D. Campbell, was indicted by a Washington County Grand Jury on eight counts of forgery. On July 12, 1999, the Defendant entered into a negotiated plea agreement and pled guilty to each count whereby she would receive a one-year sentence for each count, all to run concurrently. The Defendant requested, without objection of the State, and was granted judicial diversion and placed on probation for three years. In addition to the Defendant's probation, the Defendant was ordered to complete thirty-six hours of community service and pay restitution to the victim and merchants who accepted the forged checks. On September 10, 1999, the Defendant's probation officer filed a violation report because the Defendant failed to show

up for any probation meetings and the Defendant moved without informing her probation officer. A warrant was subsequently issued for the Defendant's arrest. On December 6, 1999, a probation revocation hearing was held and the Defendant's previously granted judicial diversion was revoked. On January 21, 2000, the Defendant was sentenced to a two-year sentence in the Tennessee Department of Correction, but the sentence was again suspended and the Defendant was placed on three years of probation and ordered to make restitution to the victim and merchants. This appeal followed.

## FACTS

The Defendant found a purse that had been left in a shopping cart at a Johnson City Wal-Mart in August 1998. The Defendant rummaged through the purse and threw the contents of the purse away, with the exception of some checks that she found in the purse. On August 22 and 23, 1998, the Defendant forged eight of the checks that she found. The checks all ranged from between $100 and $400, and totaled $1,751.98.

At one of the establishments where the Defendant forged a check, the manager of the store became suspicious of the check and contacted the victim. The victim subsequently went to the store and identified the check as belonging to her. An employee at the store identified the Defendant as the person who forged the check. At a later date, the checkbook was recovered by a manager of a local McDonald's restaurant.

On January 5, 1999, the Defendant was indicted by a Washington County Grand Jury on eight counts of forgery. The Defendant later entered into a negotiated plea agreement and pled guilty to each of the eight counts whereby she would receive eight concurrent one-year sentences. The Defendant was granted judicial diversion and given three years of probation. In addition to the Defendant's probation, the Defendant was ordered to complete thirty-six hours of community service, to pay restitution to the victim, and pay $50 to each merchant to whom a forged check was tendered.

After being granted judicial diversion and being placed on probation, the Defendant failed to meet with her probation officer. The Defendant also moved without notifying her probation officer. The Defendant's failure to meet with her probation officer and to notify her probation officer of her move were both violations of her terms of probation. On September 10, 1999, the Defendant's probation officer filed a violation report due to the aforementioned violations, and a warrant was subsequently issued for the Defendant's arrest. On December 6, 1999, a probation revocation hearing was held and the Defendant's previously granted judicial diversion was revoked. On January 21, 2000, the Defendant was sentenced to a two-year sentence in the Tennessee Department of Correction, but the sentence was suspended and the Defendant was placed on three years probation and ordered to make restitution to the victim and merchants.

## ANALYSIS

A. <u>Plea Agreement and Judicial Diversion</u>

It is evident from the transcript of the guilty plea that the Defendant's negotiated guilty plea was initially accepted by the trial court. The defendant then requested the trial court to place her on judicial diversion. The State did not object to the defendant's request. We note that had the State objected to the consideration by the trial court of the defendant's request for judicial diversion we would have held consistent with <u>State v. Dennis W. Daughtry</u>, C.C.A. No. W1999-00792-CCA-R3-CD, 2000 Tenn. Crim. App. Lexis 486 (Tenn. Crim. App., filed June 21, 2000, at Jackson), that judicial diversion was not available to this Defendant absent a clear understanding with the State that such a request would be made. The State's silence in the instant case suggests to this court that the negotiated plea was made with the understanding that the Defendant would request judicial diversion, or the State, by its silence, acquiesced in the defendant's request for judicial diversion. In turn, the Defendant, by requesting judicial diversion, waived any claim she may have had to the agreed to sentences offered by the State, for the very essence of judicial diversion is to defer not only the entry of the judgment, but any sentence at that time.

Under our statutory scheme of sentencing, judicial diversion is clearly a more favorable outcome for a defendant than any other available sentence. The Defendant in the instant case clearly got what she wanted, judicial diversion. We will not now hear her complain that she really wanted the one-year sentence offered by the State. It is totally contrary to our sentencing structure to allow a defendant to receive a plea agreement with the State which allows the Defendant to request a better sentence from the trial court and then complain when she violates the conditions of probation. The trial court was well within its authority to impose a two-year sentence under the facts of this case.

B. <u>Sentence Imposed After Probation Revocation</u>

Turning our attention to the appropriateness of the sentence imposed after the Defendant's judicial diversion was revoked, section 40-35-313(a)(2) of the Tennessee Code Annotated sets forth that "[u]pon violation of a condition of the probation, the judge may enter an adjudication of guilt and proceed as otherwise provided." This court has visited this language in the past and suggested that the appropriate avenue, via which the trial court should proceed, is to refrain from sentencing the defendant until such time as the defendant violates probation. "Upon a finding of violation of judicial diversion, the trial court shall proceed to sentence the defendant for the original offense." <u>State v. Johnson</u>, 15 S.W.3d 515, 518-19 (Tenn. Crim. App. 1999). In the instant case, it was proper to refrain from sentencing the Defendant until such time that judicial diversion was revoked.

We next turn our attention to the actual sentence imposed by the trial court after the Defendant's probation under judicial diversion was revoked. This court has recognized that in the case where a period of probation was given under a grant of judicial diversion, and then later revoked, "[s]entencing shall proceed pursuant to the standard provisions of the Sentencing Act." <u>Id</u>. As such, our review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative

showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:
(1) [t]he evidence, if any, received at the trial and the sentencing hearing;
(2) [t]he presentence report;
(3) [t]he principles of sentencing and arguments as to sentencing alternatives;
(4) [t]he nature and characteristics of the criminal conduct involved;
(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.
If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors, and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. Fletcher, 805 S.W.2d at 789.

The transcript of the sentencing hearing, conducted after the Defendant's probation was revoked, indicates that the trial court did consider enhancement factors, setting forth the Defendant's "fail[ure] ... at a release program into the community" as the "prominent enhancement factor." See Tenn. Code. Ann. § 40-35-114(8). It is also clear that the trial court considered the Defendant's juvenile record, which included juvenile adjudications for theft and trespass. It is also clear that the trial court took into consideration the nature of the crimes in the instant case - eight separate Class

E felonies. We also note that the Defendant gave no viable excuse for her probation violations. Finally, it is clear that the trial court considered as a mitigating factor the fact the Defendant was a single mother.[1] After considering these factors, the trial court imposed a two-year sentence of incarceration on the Defendant and then suspended the sentence in favor of a three-year period of probation. The trial court's sentence was not only well considered and just, but reflects the continuing efforts of the trial court to work with the Defendant instead of imposing a straight two-year sentence of incarceration. We conclude that there exists no reason to disturb the sentence imposed by the trial court.

Prior to concluding our analysis, we pause to give notice to, and briefly address, the Defendant's contention that since she was charged with eight Class E felonies, and since she was a Range I offender, the three-year period of probation she was given while on judicial diversion was outside the permissible limits. The Defendant contends that the most probation the trial court could have imposed was two years. The Defendant fails to understand Tennessee Code Annotated section 40-35-313(a)(1)(A) which sets forth that the period of probation allowed under judicial diversion is "not more than the period of the maximum sentence of the felony with which the person is charged." When this language is set against the Defendant's contention, it is clear that the Defendant is confusing the "Class" of felony with the five distinct "Ranges" set forth within the class of felony. The statute clearly refers to the class of felony, not range, in setting forth the maximum period of probation. Since the Defendant pled guilty to a Class E felony, the trial court, under the judicial diversion statute, could have imposed a period of probation on the Defendant of up to six years - the maximum sentence allowed for a Class E felony.

A similar statutory scheme is set out for regular probation in cases in which judicial diversion is not granted. Under Tennessee Code Annotated section 40-35-303(b), the Defendant could have been sentenced to up to five years of probation in addition to the mandatory minimum of one year. The Defendant's sentence of two years and three years of probation was proper.

## CONCLUSION

The Defendant has not met the burden of showing that the two-year sentence of incarceration, suspended in favor of a three-year period of probation, is improper. The sentence imposed on the Defendant is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[1] Our conclusion that the trial court considered each of these factors is derived from a combined reading of the guilty plea transcript and the probation revocation hearing transcript.